**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Forever Living Products U.S. Inc. )<br>　　　　　　　　　　　　　　　 )<br>　　　　　　Plaintiff,　　　　　 )<br>　　　　　　　　　　　　　　　 )<br>　　vs.　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　 )<br>Matthew Geyman, et al.　　　　　 )<br>　　　　　　　　　　　　　　　 )<br>　　　　　　Defendants.　　　　 )<br>_____) | CV 06-1814-PHX-PGR<br><br><br>ORDER |

Currently pending before the Court are Plaintiff's Motion to Remand (Doc. 10) and Defendants' Motion to Transfer to United States District Court for the Western District of Washington Pursuant to 28 U.S.C. § 1404(a) (Doc. 2). The Court now rules on the motions.

**I.    INTRODUCTION**

On July 21, 2006, the Defendants removed this action from the Maricopa County Superior Court to this federal forum. On the same day, the Defendants filed the present Motion to Transfer to the United States District Court for the Western District of Washington Pursuant to 28 U.S.C. § 1404(a). The Defendants make two very persuasive arguments in support of transfer. First, they argue that it is very likely that this court cannot assert personal jurisdiction over the Defendants, and that the District Court of the Western District of Washington does have personal jurisdiction over all parties. Second, the Defendants maintain that the case should be transferred because the District Court in Washington has, and is, presiding over a case involving the same parties, same counsel and closely related

issues. In response to the Defendants' motion for transfer, the Plaintiff Forever Living Products U.S., Inc. ("FLP") filed a Motion to Remand this case to the Maricopa County Superior Court arguing that removal was improper.

## II. BACKGROUND

The Defendants ask that the Court transfer this case to the Western District of Washington so that it may be assigned to Judge Marsha Pechman, who has presided since May 2005 over a related case, the factual investigation of which triggered the present lawsuit by Plaintiff FLP. The related case is captioned <u>Bach, et al. v. Forever Living Products U.S., Inc., et al.</u>, No. C05-0970P ("Bach"), in which the plaintiffs have sued FLP, its related companies, and Rex Maughn its owner, for allegedly misappropriating plaintiffs' trademarks and copyrights in the novel <u>Jonathan Livingston Seagull</u>. The lawyers in the <u>Bach</u> litigation, along with their clients Mr. Bach, the author of <u>Jonathon Livingston Seagull</u>, and Mr. Munson, the individual who took the photograph found on the cover of the book, are the Defendants in the case before this Court.

The Plaintiffs in <u>Bach</u> alleged that over the past 28 years, FLP has systematically misappropriated the name, title and copyrighted title character of <u>Jonathan Livingston Seagull</u>, and a copyrighted photo from the novel, and then used this intellectual property to create what FLP calls the "Jonathan Brand." In doing so, the <u>Bach</u> Plaintiffs allege that FLP has copied a number of passages from the book and repeatedly used the book's distinctive trade dress of a white silhouette of a seagull against a blue background to adorn its "Jonathan Brand." In <u>Bach</u>, the Plaintiffs assert that this is in violation of their rights under the Copyright Act, 17 U.S.C. § 101 <u>et seq.</u> and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by creating and exploiting the "Jonathon Brand."

As alleged in the <u>Bach</u> case, FLP used its "Jonathan Brand" to attract and retain millions of distributors and to motivate them to purchase and sell FLP's products. The <u>Bach</u> Plaintiffs' counsel contacted, and continue to contact, distributors as part of their pretrial investigation. The factual investigation by the <u>Bach</u> Plaintiffs' counsel, now Defendants to

1 the present action, prompted this suit by FLP. In conducting said investigation, Plaintiffs'
2 counsel made Google searches of FLP to review articles about and references to the
3 company. One of the websites that provided a hit for FLP is a website called
4 www.scam.com. Individuals posting on this website had made comments stating that FLP
5 was one of the Multi-Level Marketing ("MLM") companies to avoid. In an attempt to locate
6 and talk to existing and former distributors for FLP, the Bach Plaintiffs' lawyers posted the
7 following inquiry on the website:

> Hello, I am one of the attorneys representing the Plaintiffs in a lawsuit against the multi-level marketing company Forever Living Products. The suit is in federal court in Seattle and is scheduled for trial later this year. We would like to talk with existing or former independent distributors of Forever Living Products who are willing to talk about their experiences with the company. If you are an existing or former independent distributor of Forever Living Products and would be willing to talk to us, or if you know someone who is, please contact me at (206)382-1168 (work), (206) 325-1843 (evening) or mgeyman@jphillipslaw.com. Thank you, Matthew Geyman.

14 This website posting forms the entire basis of the lawsuit removed to this Court. The
15 Plaintiff argues that this particular inquiry posted by the Defendants in our case, the Bach
16 Plaintiffs' counsel, constitutes both defamation and tortious interference with business
17 relationships. The Plaintiff, without ever quoting the posting they take issue with, filed the
18 present action claiming that the Defendants' internet posting was both false and defamatory.[1]

---

[1] The Court can't help but wonder what the Plaintiff finds false and defamatory about this particular internet posting. Indeed, the poster was and is counsel for plaintiffs in a suit filed against FLP in a district court located in Seattle, and the aforementioned case is scheduled for trial. Certainly, Plaintiff's counsel is aware that truth is a complete defense to defamation suits. See, e.g., Frais v. Los Angeles County Metro. Transp. Authority, 176 F.3d 482 (9th Cir. 1999). Furthermore, the Court questions whether the present matter is nothing more than a frivolous suit brought under improper motives, and whether the filing of such a case should result in hefty sanctions under Federal Rule of Civil Procedure 11. Plaintiff's counsel, when filing a pleading with the Court, is certifying that "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(2006). The present matter strikes the Court as just the type of filing that Rule 11 seeks to preclude. There are many legitimate cases filed in this district that deserve both the Court's time and attention. This case deserves neither. Such litigation tactics cast attorneys in a negative light and ultimately result in

- 3 -

## III.    LEGAL STANDARD AND ANALYSIS

### A.    Transfer

28 U.S.C. § 1404(a) provides as follows:  "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to "individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).   A motion under § 1404(a) thus calls on the district court to weigh and balance a number case-specific factors.  Id.  The following factors may be considered by the Court when reaching its decision on a motion to transfer:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the Plaintiff's choice of forum; (4) the respective parties contacts with the forum; (5) the contacts relating to the Plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

Under the facts of this case, considering both convenience and fairness, the balance tips in favor of transfer.  First, a court in the Western District of Washington will have personal jurisdiction over the parties.  Second, the district court in Washington is presiding over related litigation in which all parties and their counsel are present.  The third consideration is that none of the present parties will be inconvenienced by transfer of this case to the aforementioned district.

Although the Defendants bear the burden of showing that transfer is appropriate, that burden is easily met in this case.  There is little doubt that this Court lacks jurisdiction over some, or more than likely, all of the Defendants.  When a lack of jurisdiction is likely, it is

---

a black mark on the profession as a whole.

- 4 -

proper to transfer the action to a district where the action could have been brought, and where the district court has personal jurisdiction over the Defendants. Grandinetti v. Luna, 2006 WL 1455572 (D. Ariz. 2006). In the present case, there is no basis for taking general jurisdiction over the Defendants as none work, live or do business in the State of Arizona. The sole alleged connection with Arizona for the purposes of specific jurisdiction, and indeed the only alleged contact by any Defendant with Arizona, is the aforementioned passive website inquiry on www.scam.com. As the Defendants correctly note, such a connection is facially inadequate to demonstrate that Defendants purposely directed their activities to this state.

The Ninth Circuit has well developed case law regarding personal jurisdiction based on contacts through the internet. This circuit has concluded that something more than mere advertisement or solicitation on the internet is necessary to indicate that a Defendant purposely, albeit electronically, directed his activity in a substantial way to the forum state. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997); see also Bancroft & Masters, Inc. v. Augusta National Inc., 223 F.3d 1082 (9th Cir. 2000); Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062 (9th Cir. 1990). As brought to the Court's attention by the Defendants, the case of Medinah Mining, Inc. v. Amunategui, 237 F. Supp 3d 1132 (D. Nev. 2002), is directly on point. In the Medinah Mining Case, the court held that a resident of the state of Arkansas did not purposely avail himself of the privilege to conduct business activities in the state by posting allegedly defamatory messages about a Nevada corporation on an interactive website. Id. As noted by the Nevada District Court, such websites are set up for the public to post information, and anyone who visits the website can obtain information or post one's own message. Id. There is no service being bought, sold or promoted. Id. at 1135.

These are just a few of the cases contained in a wide body of case law stating the same principle: Allegedly tortious conduct on a passive website will not vest jurisdiction in a forum merely because the Defendant knows that the alleged victim of the alleged wrong resides in that forum. See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1158 (9th Cir. 2006).

1    Many of the cases discussing personal jurisdiction based on internet communication are
2    indistinguishable from the present factual scenario.  One such case, the recently decided
3    Pebble Beach, unequivocally shows that this Court lacks jurisdiction over the parties. Id.
4    However, the Plaintiff ignores this large body of case law, cites entirely irrelevant cases, and
5    makes frivolous arguments.  In sum, the Plaintiff wastes this Court's time and scant judicial
6    resources in filing such a frivolous complaint and then opposing the pending motion to
7    transfer.
8           Furthermore, as the Defendants correctly argue, it does not appear that the Plaintiff
9    will be in any way inconvenienced in the Washington District Court since it is already
10   litigating the Bach case in that forum.  The Plaintiff no doubt selected Arizona as the forum
11   for this litigation because it is headquartered, although not incorporated, here.  However, as
12   the Defendants suggest, the Plaintiff is more than likely trying to harass and intimidate the
13   Defendants due to the case filed against FLP in the Western District of Washington. The
14   preference for honoring a Plaintiff's choice of forum is simply that – a preference.  It is not
15   a right.  See, e.g., E.I. DuPont de Nemours v. Diamond Shamrock Corp., 522 F. Supp. 588
16   (D. Del. 1981).  Considering the posture of the present case, the Court will not rely on the
17   fact that Plaintiff chose Arizona as a reason to keep the matter in this district when the
18   interests of justice and fairness so clearly require otherwise.
19          The Plaintiff argues that if this Court declines to remand this matter to the state court,
20   then it should also deny transfer as the Defendants have not demonstrated that the
21   Washington court is the most convenient forum.  In support of this position, the Plaintiff
22   makes the meaningless argument that two of the Defendants, the author Bach and the
23   photographer Munson, have admittedly and voluntarily vacationed in this state. In addition,
24   the Plaintiff posits that the Defendant Phillips Law Group's website is available to Arizona
25   residents and in fact highlights their participation in significant litigation before a tribal court
26   located in Window Rock, Arizona.  The Court finds both arguments entirely irrelevant and
27   concludes that perhaps Plaintiff is attempting to insult this Court's knowledge of the law.  A
28

1 Navajo Tribal Court is not considered a state or federal court in Arizona. It is a completely
2 different sovereign. Furthermore, Defendant Geyman has never practiced in the state or
3 federal courts of Arizona, and lives and practices law in Seattle. Again, when arguing that
4 personal jurisdiction can be exercised over the Defendants in this state, the Plaintiff
5 completely ignores the considerable body of law in the Ninth Circuit that establishes
6 definitively that posting an inquiry on a passive website does not qualify as express aiming.
7 As stated above, this conclusion was reiterated in the Ninth Circuit's Pebble Beach decision
8 just a few months ago. 453 F.3d at 1155.

**B.     Remand**

Soon after removal the Defendants' Motion to Transfer was filed, the Plaintiff filed the present Motion to Remand arguing that this Court lacks the requisite subject matter jurisdiction because the amount in controversy does not exceed $75,000, exclusive of costs and interests. The Plaintiff contends that while it is possible that FLP's cumulative, special, general, compensatory and punitive damages could exceed the required $75,000, FLP did not, and does not, intend to recover more than $75,000, exclusive of costs and interests. The Plaintiff argues that it was never its intention to recover damages, but simply to have the allegedly defamatory solicitation removed from the website. The Plaintiff argues that it is its absolute right to sue for less than the total amount of its actual damages. Indeed, the United Supreme Court has stated that if a Plaintiff does not desire to try his case in federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the Defendant cannot remove. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 295 (1938). However, this case is distinguishable from one that clearly pleads less than the statutory minimum while more could be recovered.

The Defendants maintain that removal was proper in this case since to establish that the $75,000 jurisdictional amount is met, the Defendants need only establish that it is more likely than not that the amount in controversy exceeds that amount. Sanchez v. Monumental

- 7 -

1 Life Ins. Co., 102 F.3d 298, 404 (9th Cir. 1996). In measuring the amount in controversy, a
2 court must assume that the allegations in the complaint are true and assume that a jury will
3 return a verdict for the plaintiff on all claims made in the complaint. Kenneth Rothschild
4 Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). In the
5 present case, not only did the Plaintiff allege that it suffered "public contempt, ridicule,
6 degradation, severe outrage and actual pecuniary damage to its business reputation," it also
7 sought special, general, compensatory and punitive damages in an amount "sufficient to deter
8 Defendants and others from engaging in similar tortious conduct in the future."

9      The Plaintiff has made a post hoc attempt to disavow some of the damages alleged in
10 the Complaint by stating that it only wants the Defendants to remove their bulletin board
11 inquiry that allegedly prompted this suit. To support this argument, the Plaintiff attaches the
12 declaration of its treasurer and secretary, and General Counsel of all FLP companies, Rjay
13 Lloyd. The Court now reasons that if Plaintiff merely wanted declaratory relief, why did
14 it fail to file such an action instead of one pleading not only compensatory but also punitive
15 damages. The Plaintiff has made more than one contradictory statement in its filings. So
16 many, in fact, that most of Plaintiff's allegations strike the Court as entirely disingenuous.

17 **IV. CONCLUSION**

18      The Court concludes that this case be transferred to the Western District of Washington
19 based on both the lack of personal jurisdiction over Defendants and the underlying Bach
20 litigation. Plaintiff's Motion to Remand based on improper removal is without merit. In
21 bringing said motion in response to the Defendants' request to transfer, Plaintiff blatantly
22 ignores nearly every legitimate argument made by Defendants, based both in fact and in
23 law, and then goes on to cite clearly irrelevant case law.[2] The sole event that gives rise to the

---

25     [2] According to the Arizona Rules of Professional Conduct, ER 3.3(2), a lawyer shall not
26 knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."
27 The Court is well aware that opposing counsel cited all relevant and controlling cases concerning jurisdiction based on internet communications, but the fact that the Plaintiff's counsel did not address

- 8 -

present litigation is a single communication by the Bach Plaintiffs' counsel while conducting his factual investigation of the case. As the Defendants point out, Judge Pechman, the Judge presiding over the Bach litigation, is in the best position to determine what constitutes such factual investigation subject to the litigation privilege. If the Plaintiff legitimately believes this lawsuit has merit, then it should have no concern about having the case transferred to the Western District of Washington.   Therefore,

IT IS ORDERED that the Defendants' Motion to Transfer to the United States District Court for the Western District of Washington Pursuant to 28 U.S.C. § 1404(a) (Doc. 2) is GRANTED.

IT IS FURTHER ORDERED that the Plaintiff's Motion to Remand (Doc. 10) is DENIED.

DATED this 18th day of December, 2006.

Paul G. Rosenblatt
United States District Judge

---

or even attempt to distinguish those cases from the present factual scenario clearly calls into question certain ethical considerations.